IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

REGGIE TOWNSEND,

                        Plaintiff,

    v.

JERRY ALLEN,

                        Defendant.

ORDER

05-cv-204-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     A jury returned a verdict for plaintiff Reggie Townsend on his claim that defendant Jerry Allen violated plaintiff's Eighth Amendment rights by forcing him to sleep on an unsanitary mattress for approximately two months while he was incarcerated at the New Lisbon Correctional Center in late 2004 and early 2005. Like many parties who lose at trial, defendant has filed a motion for judgment as a matter of law under Fed. R. Civ. P. 50, or, in the alternative, for a new trial or remittitur on damages. In addition, defendant has filed a much less common "motion for leave to interview the jurors" in order to discover whether the jury relied on "extranenous information" in reaching its verdict. In a previous order, I granted defendant's motion to stay briefing on its motion for judgment as a matter of law until its other motion was resolved. Defendant's motion to interview the jurors is now ripe

1

for review. It will be denied.

Defendant acknowledges that this court's local rules prohibit parties and their counsel from contacting jurors without permission of the trial judge. In support of his motion, defendant relies on Fed. R. Evid. 606(b), which states:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

An issue ignored in defendant's opening brief is the appropriate standard for allowing "an inquiry into the validity of a verdict" through juror questioning. Defendant suggests in his reply brief that he should be allowed to question the jurors "without any prior showing of impropriety," dkt. #236, at 3, but that view is inconsistent with the local rule, case law and the design of the jury system itself.

Of course, defendant is correct that he has a right to a nonbiased jury that decides his case on the basis of the evidence, but that does not mean he may use any means necessary to enforce that right. Our judiciary uses voir dire as the primary tool in ferreting out potential biases and determining whether a particular juror will decide the case fairly. <u>Arreola</u>

v. Choudry, 533 F.3d 601, 606 (7th Cir. 2008).  Once the jury is picked, there must be a presumption that jurors will uphold their sworn oath to try the case fairly and give a verdict according to the law and evidence.

Jurors who have completed their service are entitled to the court's, the parties' and the community's respect.  Those who make the sacrifice that being a juror entails should not have their lives further disrupted as a matter of course and they should not be subjected to probing and potentially embarrassing questions challenging their integrity as jurors unless there are substantial grounds to believe that they have considered inappropriate and prejudicial information.  If Rule 606(b) is not read as requiring a threshold showing of misconduct, there is a danger that a party will use the rule simply as mean to harass and intimidate jurors after receiving an unfavorable verdict.  If we wish to maintain the jury system that we have, potential jurors must have confidence that they will be treated with dignity by both parties and that exposing their personal lives will not become a method for easing the losing party's posttrial frustrations.

The parties appear to agree that the Court of Appeals for the Seventh Circuit has not articulated a standard for conducting an inquiry under Rule 606(b), Artis v. Hitachi Zosen Clearing, Inc., 967 F.2d 1132, 1141 n.9 (7th Cir. 1992), except to state that the decision is within the discretion of the trial court.  Delvaux v. Ford Motor Co., 764 F.2d 469, 471 (7th Cir. 1985).  However, in United States v. Lanas, 324 F.3d 894, 904 (7th Cir. 2003),

the court held that a "district court is under no obligation to investigate the possibility of extraneous influence on a juror unless the [party challenging the verdict has] made a colorable showing of taint." See also United States v. Davis, 15 F.3d 1393, 1412 (7th Cir. 1994) (setting forth standard and citing various other jurisdictions that have adopted it). Defendant has not met that standard.

To begin with, two of the grounds defendant identifies to support his motion have little or nothing to do with the possibility that a juror may have considered extraneous information. First, defendant alleges in quite inflammatory fashion that two of the jurors lied about their background during voir dire. In particular, defendant says that one juror (Juror A) failed to disclose the extent of a relative's history of incarceration and failed to disclose that he had been a defendant in various lawsuits. Defendant alleges that another juror (Juror B) lied when he answered "no" to the questions "Do any of you believe that prisoners are victims of society and do not deserve confinement for the crimes they commit?" and "Have any of you ever belonged to a civil rights organization?"

Defendant's arguments regarding juror dishonesty are problematic on a number of levels. Perhaps most fundamentally, defendant never really explains why he believes that a dishonest answer during voir dire means that the particular juror was more likely to have relied on extraneous information during deliberations. The case defendant cites involving alleged juror dishonesty did not address this issue but rather addressed the circumstances

4

under which a juror's false answer demonstrated juror bias, requiring a new trial. McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548 (1984). The Supreme Court held that "to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." Id. at 556.

Defendant does not argue that he can meet the Greenwood standard and he could not meet the standard if he tried. For one thing, defendant's labeling of these jurors' answers as "dishonest" is irresponsible, if not reckless or even defamatory. For example, in accusing Juror B of lying, defendant relies solely on a website that identifies someone with the same name as Juror B as having signed a petition supporting the view that marijuana users should not be imprisoned. Apparently, defendant believes that anyone signing such a petition has joined a civil rights organization and has subscribed to the view that "prisoners are victims of society and do not deserve confinement for the crimes they commit." This is a frivolous argument; no reasonable person would view those voir dire questions as broadly as defendant. If he wanted to elicit information regarding every piece of paper a juror signed, he should have proposed more specific questions.

Defendant's argument regarding Juror A is not much better. In response to a question whether a family member had "ever been incarcerated in a jail or prison," Juror A answered that a relative was now in jail. Defendant alleges that Juror A lied by failing to bring up

5

other incarcerations that defendant says were in the relative's past, but the question was simply about the fact of incarceration, not the extent of it. If defendant wanted a full history, he was free to request follow up questions but he failed to do so.

Defendant's strongest argument is that Juror A may have failed to disclose that he had been a defendant in a significant number of lawsuits, mostly small claims actions. It is certainly plausible that Juror A simply failed to understand that "lawsuits" included small claims actions and cases that were dismissed with out being adjudicated. E.g., Greenwood, 464 U.S. at 555 (noting that many jurors "may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges"). However, even I assume that Juror A answered this question untruthfully, defendant cannot show that a truthful answer would have provided grounds to strike that juror for cause. If anything, a person who had been sued for money damages so many times would be more likely to be sympathetic for defendant, who was also being sued for money damages.

The allegations regarding the jurors are so weak that it is puzzling why defendant chose to include them in his motion. They do nothing to suggest that any of the jurors relied on extraneous information and they come nowhere close to satisfying the standard for obtaining a new trial. Defendant has accomplished nothing except to bring potential embarrassment to the jurors by publicly accusing them of violating their oath. (Initially, defendant did not file his motion under seal. In his response to defendant's motion, plaintiff

attached several news stories that printed the jurors' names and defendant's accusations against them.) It would be an understatement to say that defendant's decision to bring these allegations was an exercise in poor judgment.

Defendant's second ground for questioning the jurors is that "one juror . . . fled the jury room in apparent disgust" and that the jury reached its verdict almost immediately after that juror returned to continue deliberating. Dft.'s Br., dkt. #236, at 4. This is another nonstarter. Again, defendant does not clearly explain his reasons for relying on this incident to support his motion, but the only plausible argument is that the juror was improperly influenced by other jurors to change her vote or she simply gave up out of exasperation.

The problem with this argument is that courts are uniform in holding that questioning under Rule 606(b) is not justified by suggestions that one juror "was pressured by other jurors" or "overcome by weariness." 3 Weinstein's Federal Evidence § 606.04[3][a] at 606-29 & n.27 (2d ed. 2008) (citing United States v. Tallman, 952 F.2d 164, 166-67 (8th Cir. 1991); United States v. Norton, 867 F.2d 1354, 1366 (11th Cir. 1989); United States v. Lamp, 779 F.2d 1088, 1097 (5th Cir. 1986); United States v. Barber, 668 F.2d 778, 786-87 (4th Cir. 1982); United States v. Grieco, 261 F.2d 414, 415-16 (2d Cir. 1958). This is an issue that falls squarely within the prohibition in the rule against a juror testifying about "the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict." Fed. R. Civ. P. 606(b). See also United

7

States v. Briggs, 291 F.3d 958, 961-63 (7th Cir. 2002) (juror's statement in exit questionnaire that juror was "intimidated" by other jurors into rendering guilty verdict relates to "intrajury influence" and did not provide basis for new trial or further inquiry under Rule 606(b)).

What does this leave of defendant's motion? Not much. He points to questions the jury submitted during deliberations regarding plaintiff's legal fees and possible indemnification by the state. Because the jury submitted these questions on the second day of trial and did not render a verdict on damages until the third day, defendant says there was a possibility that the jurors researched the answers to these questions on their own between the second and third day. (Defendant points to a third question from the jurors about the difference between compensatory and punitive damages, but he says nothing about the question except that it "clearly indicates the jury inappropriately utilized extraneous prejudicial information in deciding the extraordinary punitive damage award." Dkt. #225. The issue is not so clear and the argument is waived.)

Of course, there is always a possibility in any multiple-day trial that jurors will try to answer a question for themselves by reading the newspaper or conducting an internet search, but this does not mean that the losing party in every trial lasting longer than one day is entitled to probe the details of jurors' activities outside the court. In response to the jurors' questions, I instructed them that they could not consider whether their award would be used

8

to pay plaintiff's legal fees or whether defendant would be indemnified by the state. Dkt. #212. Further, the jurors were instructed at the beginning of the trial *and* just before they adjourned on the second day that they were not permitted to do any independent research on the internet or anywhere else. Dkt. ## 205 and 212. Defendant has not suggested in his motion that these instructions were inadequate in any way.

The cases are legion in which the court of appeals has held that courts must presume that jurors follow the instructions given to them unless there is an "overwhelming probability" that the temptation to disregard them was too strong to resist. E.g., United States v. Gallardo, 497 F.3d 727, 736 (7th Cir. 2007) (district court did not abuse its discretion in refusing to hold evidentiary hearing regarding "extraneous papers" jurors brought into deliberations when court had instructed jurors not to refer to those papers or do any independent research). Defendant does not even try to meet that standard. Like the defendants in Gallardo, defendant Allen "offer[s] nothing but speculation in support of [his] claim." Id.

Finally, defendant points to the jury's $295,000 punitive damages award as evidence of impropriety. This issue is a poor fit for a motion under Rule 606(b). If defendant believes the jury's award is unreasonably high, the appropriate response is to not to challenge the integrity of the jury but to file a motion for remittitur (which defendant has done).

9

ORDER

IT IS ORDERED that

1. Defendant Jerry Allen's motion for leave to interview the jurors, dkt. # 224, is DENIED.

2. Defendant may have until November 19, 2008, to file a brief in support of its motion for judgment as a matter of law, or, in the alternative for a new trial or remittitur on damages; plaintiff may have until December 10, 2008 to file a response; defendant may have until December 22, 2008 to file a reply.

Entered this 29th day of October, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge